# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4029

_____

| | | |
|---|---|---|
| Craig Thorstenson, | * | |
| | * | |
| Plaintiff–Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Gale A. Norton, Secretary, United | * | District Court for the District |
| States Department of the Interior; | * | of South Dakota. |
| Bureau of Indian Affairs, United | * | |
| States Department of the Interior; | * | |
| | * | |
| Defendants–Appellees, | * | |
| | * | |
| Russell J. McClure; Cheyenne River | * | |
| Sioux Tribe, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: September 14, 2005
Filed: February 28, 2006

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Craig Thorstenson appeals from the district court's[1] grant of summary judgment in favor of the defendants. This case made its way to the district court on appeal from a tribal probate decision. Thorstenson seeks remand of this matter to enforce his claim for money damages arising from amounts paid for trust land that has not been transferred. Because the remedy for Thorstenson's claim does not lie with us, we affirm the judgment of the district court.

## I.    BACKGROUND

This case dates back to 1971 and involves nearly every legal venue conceivable. The fighting issue revolves around a tract of South Dakota tribal land held in trust by the United States government. Thorstenson claims an interest in money paid by Thorstenson's predecessors for the purchase of the trust land, which money was never refunded by the proposed sellers when the conveyance was not completed. The following recitation of facts outlines the litigation involved in this dispute.

### A.    1971 Land Contracts

Around 1971, Grover Cudmore, an Indian, and his non-Indian wife, Virginia, executed various contracts for deed with Thorstenson's father and uncle (Thorstenson's predecessors-in-interest) for the sale of certain tracts of land owned by the Cudmores, including 1,120 acres held in trust by the United States. To convey trust land, 25 C.F.R. § 152.17 requires authorization from the Secretary of the Interior. The parties agreed that the Cudmores had submitted or would submit an application to the Secretary of Interior for authorization to sell the trust land. The contracts specifically provided that as to the trust land, the agreement was only effective in the event

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

approval was received.  Thorstenson paid the Cudmores $37,056.14 for the trust land even before Secretarial approval was obtained for the transfer.

## B.     Escrow Agreement

In 1986,[2] the parties entered into an escrow agreement, in which the Cudmores agreed to transfer the trust property or deposit $37,056.14 (the amount which the Cudmores had already been paid for the as yet unconveyed trust land) into an escrow account.  Further, the Cudmores agreed to return Thorstenson's payments attributed to the trust land in the event that conveyance of the trust land was not ultimately approved by the Secretary.  Thorstenson agreed to deposit, and did deposit $4,311.28, which represented the final payment due on one of the earlier contracts.  However, the Cudmores did not transfer the trust land, failed to deposit their agreed-upon amount into the escrow account, and forbade the bank handling the escrow from returning the money in the account to Thorstenson.

## C.     Tribal Court Proceedings

In 1987, Thorstenson sued Grover Cudmore in tribal court (Virginia, a non-Indian, was not part of this suit) for fraud and breach of contract over the land sale.  Grover counterclaimed.  After the evidence was presented to the jury, but prior to the case being submitted to the jury for determination, Thorstenson withdrew his contract claim.  Apparently the parties had some difficulty settling on jury instructions with the court.  The terms of the withdrawal, based on discussions conducted in the judge's chambers, were not recorded.  The jury found for Grover on the fraud claim and in favor of Thorstenson on the counterclaim (both parties lost) and awarded no damages.  When Thorstenson later tried to renew his contract action, based upon his

_____

[2]We have no information regarding the nearly fifteen-year lapse between the originating contracts and the creation of the escrow account.

understanding that it was dismissed without prejudice, the tribal court denied the claim, holding that the contract action had been dismissed with prejudice. Thorstenson appealed and the tribal appellate court ultimately affirmed the lower court's denial. This ruling was never appealed.

### D.    State Court Proceedings Against Virginia Cudmore

Grover died in February 1997 and Virginia tentatively received a life estate in the trust property under the terms of Grover's Bureau of Indian Affairs (BIA)-approved will. After Grover's death, Thorstenson sued Virginia in state court for breach of contract. The state court rejected Virginia's res judicata defense based on the tribal court proceedings and entered judgment for Thorstenson in 1999 on his contract claim. Thorstenson attempted to enforce the judgment against Virginia but she filed for bankruptcy relief some time between 2000 and 2001.

### E.    Virginia Cudmore's Bankruptcy Proceedings

Thorstenson was the sole unsecured creditor in Virginia's bankruptcy proceedings. The Chapter 13 Plan provided generally that Thorstenson would have the beneficial use of Virginia's life estate, without paying rent or only minimal rent for the use of the land. This beneficial use was to be governed by a "written BIA lease," which was subject to approval by the BIA and subject to other applicable federal rules. The BIA was present and participated in the bankruptcy proceedings. It agreed to Virginia's proposal regarding her life estate, insisting upon lease language saying that Thorstenson would comply with the same lease provisions as other tenants who were leasing allotted Indian lands, specifically the requirement that BIA approval was required for Virginia to execute a lease. At the time of these proceedings Thorstenson had possession of the trust lands as a tenant.

**F.    The BIA's Disposal of the Trust Land**

Even though the BIA agreed to Virginia's bankruptcy plan, it took the position that Virginia did not yet have a life tenancy nor the authority to agree to the use of the land during her life tenancy because Grover's probate proceedings were not yet finalized.  The BIA contended that it still held the entire property as trustee.  In that role, "as with all open probate matters," the BIA was required to obtain the fair annual rental value for Indian land on behalf of the undetermined heirs and devisees of the deceased Indian owner.  25 C.F.R. § 162.209(a)(3).  Thus, the BIA engaged in competitive bidding to establish the fair annual rental rate.  The BIA then leased the property to a third party.

Not wanting to vacate the property, Thorstenson unsuccessfully sought enforcement of the Chapter 13 Plan.  At the same time, the BIA threatened penalties if Thorstenson did not remove himself from the property.  Thorstenson's attempt to appeal the BIA's actions was rejected by the Office of Hearings and Appeals and the Interior Board of Indian Appeals as a purportedly non-appealable matter.

**G.    Tribal Probate Proceedings**

As earlier indicated, the trust land at issue became part of Grover's probate estate following his death.  Virginia was Grover's personal representative. Thorstenson filed a claim in the probate proceeding for reimbursement of the overpayments for lands not delivered under the contracts for deed.  Thorstenson used his state court judgment against Virginia to support his claim.  A hearing on Grover's estate was held on June 18, 1998.  The Administrative Law Judge (ALJ) reviewed the state and tribal court proceedings as well as the contracts and escrow agreement and denied Thorstenson's claim in August 2001.  In doing so, the ALJ gave full faith and

credit to *both* the tribal court and state court judgments and determined that the tribal court judgment "free[d]. . . Grover Cudmore from being further answerable in the tribal court for any monetary amount." The ALJ further noted that Thorstenson's judgment in state court was against Virginia individually, and not in her representative capacity, and that since it did not name Grover or his estate it could not be enforced against the estate. Thorstenson's request for rehearing of the ALJ's order was denied in January 2002.

Thorstenson appealed the denial of his request for rehearing to the Interior Board of Indian Appeals (Board). In June 2003, the Board affirmed the denial of the claim with modifications. The Board held that "[t]o the extent either [the tribal court or the state court] judgment purported to affect . . . title to trust land, both courts lacked subject matter jurisdiction because Federal law governs any transaction concerning the sale and conveyance of Indian trust lands," citing 25 U.S.C. §§ 372-73, 379, 404-05; 25 C.F.R. Part 152. The Board further held that because Thorstenson failed to comply with federal law and obtain the necessary approval from the BIA, neither the tribal court nor the state court had jurisdiction over Cudmore's trust lands. Accordingly, the Board held that although the ALJ erred in giving full faith and credit to those judgments, denial of Thorstenson's claim was still appropriate given Thorstenson's failures.

Thorstenson appealed the Board's ruling to the district court. Before the district court and in his briefs on appeal to this panel, Thorstenson argued that 1) the Board erred in failing to find the state court judgment against Virginia binding against Grover's estate, 2) the Board erred in stating that the parties attempted to convey property without approval, and 3) because the contracts were conditioned upon the application of approval from the BIA, they are valid regardless of whether the approval was sought or granted.

In March 2004, the district court granted the government's motion to dismiss on various grounds, including Thorstenson's lack of standing to seek an injunction or declaratory judgment, resolving Thorstenson's alleged property interest in the trust land and his takings contention. Thorstenson did not appeal from that particular order.[3] In a September 2004 order, the district court addressed Thorstenson's remaining claim seeking judicial review of the Board's ruling in the probate proceeding and granted the government's motion for summary judgment there, too. The district court held 1) the state court lacked jurisdiction to determine Thorstenson's breach of contract claim because it involved Indian trust land, 2) the contracts and escrow agreement were unenforceable against Grover's estate because they lacked the Secretary's approval, and 3) Thorstenson received a full and fair opportunity to present his claims to the ALJ.

## II.    DISCUSSION

### A.    Standard of Review

When reviewing agency actions, we, like the district court, make an independent decision based upon the same administrative record that was before the factfinder. Sierra Club v. Davies, 955 F.2d 1188, 1192 (8th Cir. 1992). Our task is to review the Board's decision and determine whether it was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

---

[3]Although Thorstenson could not, of course, appeal the March order until all claims and contentions were ruled upon, the Notice of Appeal stated in its entirety, "COMES NOW, Plaintiff, Craig Thorstenson, and appeals to the United States Court of Appeals for the Eighth Circuit from the Judgment dated September 24, 2004, and entered in this action on the 21st day of October, 2004."

**B.    Contracts and Escrow Agreement**

We begin our attempt to unravel this tangled web by first noting that the terms of the contracts and escrow agreement at issue did not materially affect title to the Indian trust land.  Accordingly, both the tribal court and state court had jurisdiction to hear Thorstenson's claims for money damages.

Under 25 U.S.C. §  348, any conveyance of Indian trust land, "or any contract made touching the same," is absolutely null and void.  The BIA argues that the contracts at issue here are null and void under section 348.  We disagree.  The contracts clearly state that they are only effective to convey trust land in the event the parties obtain the approval of the BIA.  Specifically, the contracts say:

> It is further understood and agreed that this contract shall be effective only in the event patents can be obtained to the land described above in Tract 2, for which application for patent is or will be made.
>
>  . . .
>
> It is further understood and agreed that said land is presently in trust status and first parties are applying for patents and that this contract is effective only upon the issuance of the patents.

The provisions requiring prior BIA approval *precede* any conveyance of trust land and unless and until such application is made, nothing in the agreements touch upon trust land at all.  Thus, we need not reach, much less run afoul of, the requirements under 25 U.S.C. §§ 372-73 (ascertainment of heirs of deceased allottees and disposal of trust land by will), 379 (sale of trust land by heirs), and 404-05 (sale on petition of trust land), enactments relied upon by the Board.

Were we to affirm the district court and the Board on this issue, we would substantially tie the hands of all Indians who wish to convey their land. Such a conclusion would restrict such individuals from securing any sort of down payment, earnest money or other such assurances that the land sale would take place after BIA approval. The government's position that an Indian may not secure a proposition by obtaining initial monetary considerations conditioned upon the subsequent approval of the Secretary is the ultimate catch-22. We recognize Congress's clear intent in the current statutory scheme to protect beneficial owners of Indian trust land and our ruling does not run counter to that intent. 25 U.S.C. §§ 348, 464-65, 483. Black Hills Inst. of Geological Research v. S.D. School of Mines and Tech., 12 F.3d 737, 744 (8th Cir. 1993). Nothing should hinder an Indian's right to enter into a binding escrow agreement that states "I'm going to comply with the law."

Further, the Board and the district court apparently failed to recognize that Thorstenson's specific claim against Cudmore's estate (and his claim against Virginia in state court) did not involve title to the trust land at all–only money. Thorstenson only sought to enforce a money judgment based upon damages arising from payments both parties agreed were made by Thorstenson's predecessors-in-interest for land that was never transferred. Whether or not the BIA had yet approved of the initial contracts is neither here nor there as to Thorstenson's recovery for money paid, prematurely, for the trust land at issue prior to the establishment of the escrow account.

## C.     Thorstenson's Claim for Money Damages

Unfortunately, our determination concerning the validity of these contracts and the separate nature of the escrow agreement does not carry the day for Thorstenson. In this action, Thorstenson seeks to enforce his judgment, obtained against Virginia

in state court, in the pending tribal probate action involving Grover Cudmore's estate. However, Thorstenson does so without any force of law. On this issue, we agree with the decision of the ALJ–the first tribal court judgment in favor of Grover Cudmore and against Thorstenson effectively freed Grover Cudmore from being further answerable in the tribal court for any monetary amount. Thorstenson did not appeal that decision beyond the tribal appellate court. And, the judgment in *favor* of Thorstenson was rendered in state court against Virginia individually and not in any representative capacity. Thorstenson provides no legal authority in support of his argument that the judgment against Virginia is binding against Grover's estate. Thus, whatever remedies may remain lie in state court against Virginia Cudmore. These matters, we know, are now tied up in Virginia's pending bankruptcy action. Unfortunately, the only place for Thorstenson to lodge this legitimate claim is in bankruptcy court.

### D. Remaining Claims

Finally, Thorstenson raises constitutional claims on appeal including his claim that his expectation of continuing tenancy constitutes a property interest protected by the Constitution. However, we are unable to address any of Thorstenson's constitutional issues, as he did not appeal from the district court's March 2004 order, which analyzed and dismissed these claims. Thorstenson appeals only from the September 24, 2004, order, which reviewed the probate proceedings of the estate of Grover Cudmore. The September order also addressed Thorstenson's argument that he was denied a full and fair opportunity to present his claims to the ALJ, a claim that the district court denied, and Thorstenson does not raise this argument on appeal. As

-10-

such, Thorstenson's constitutional claims regarding his property rights and any alleged expectation of continuing tenancy in the trust lands are not properly before this panel.[4]

## III.   CONCLUSION

Although both parties concede that Thorstenson's predecessors-in-interest overpaid the Cudmores by giving the Cudmores money for land that was never transferred, Thorstenson is left without redress in this court for that claim.  For the reasons stated herein, we affirm the district court's grant of summary judgment in favor of the government and deny the same as to Thorstenson.

_____

---

[4]Regardless, we reject Thorstenson's argument that he has a protectable property interest in his tenancy on this land.  Virginia's Chapter 13 Plan allows for Thorstenson's continued tenancy under Virginia's life estate but that tenancy is subject to BIA approval, which has not yet been given due to the pendency of the probate proceedings.  Therefore, Thorstenson has no tenancy rights at this time and it was unreasonable for him to believe otherwise.